[Crim. No. 383.    Second Appellate District.—May 1, 1915.]

THE PEOPLE, Respondent, v. U. S. CUIN, Appellant.

CRIMINAL LAW — LARCENY OF COW — EVIDENCE — THEFT OF DIFFERENT COW BY MEMBER OF DEFENDANT'S FAMILY.—Where in a prosecution for the larceny of a cow there is a decided conflict in the testimony as to whether the cow whose carcass the prosecuting witness discovered several miles from the place of the alleged theft, was the cow in question, it is prejudicially erroneous to the defendant to allow testimony, over his objection, as to the theft of another cow belonging to the complaining witness by some other member of the defendant's family, the defendant not being charged with the larceny thereof.

ID.—EVIDENCE—IMPEACHMENT OF WITNESS—ILLICIT RELATIONS WITH DEFENDANT—REVIEW OF ERROR ON APPEAL.—It is not permissible to impeach the credibility of a witness by asking her questions

tending to impute to her illicit relations with the defendant; it is however essential that the asking of such improper questions be assigned as misconduct at the trial in order that the error may be reviewed on appeal.

ID.—ORDER OF EVIDENCE—TESTIMONY IN CHIEF—REBUTTAL—DISCRE-TION.—It is within the discretion of the trial court to allow a witness to be called in rebuttal and to give testimony which more properly should have been introduced on the main case for the prosecution, where the defendant is allowed an opportunity to rebut such testimony if he desires.

ID.—REASONABLE DOUBT—FAILURE TO GIVE INSTRUCTION—WHEN NOT ERRONEOUS.—The failure to give an instruction specifically defining reasonable doubt is not erroneous in the absence of a request for such instruction.

ID.—STOLEN PROPERTY IN DEFENDANT'S POSSESSION—IMPROPER INSTRUC-TION.—An instruction to the effect that if the jury believed from the evidence that the defendant was found "with the stolen property in his possession," etc., is improper, as it assumes that the cow had been shown to have been stolen, when the fact was one directly in issue, and under the testimony a debatable question.

ID.—ESSENTIALS OF LARCENY—MISLEADING INSTRUCTION.—An instruction "that to constitute larceny there must be a felonious and fraudulent taking of the property with the intent to deprive the owner of its use. The taking must be accompanied by the removal, but such removal is sufficient," is ambiguous and possibly misleading.

APPEAL from a judgment of the Superior Court of Imperial County and from an order denying a new trial, Franklin J. Cole, Judge.

The facts are stated in the opinion of the court.

O. V. Willson, and Willson & Frazier, for Appellant.

U. S. Webb, Attorney-General, and R. M. Clarke, Deputy Attorney-General, for Respondent.

JAMES, J.—Defendant was convicted of the crime of grand larceny and sentenced to serve a term in the state penitentiary. There was a motion for a new trial and an appeal was then taken from the judgment and from the order denying that motion.

The subject of the alleged larceny was a certain cow belonging to one Lammers. By the testimony it was shown that Lammers, being the owner of a lot of cows, leased eleven of

them to a Mrs. Elliott who was conducting a dairy a short distance from the town of El Centro in Imperial County. Mrs. Elliott received the cows in July, 1914. In September Lammers visited the Elliott Ranch and found only nine of the eleven cows there. He was told that the two had jumped out of the field into another pasture. At another time, as Lammers testified, Mrs. Elliott stated that the two cows had strayed off. Upon making a search for the missing cows Lammers discovered on the ranch of one. Gibson, which was several miles away, the carcass of a cow, with the hide, head, and horns, which he identified as being those of one of the missing cows. The color of the hide, he testified, was like that of his cow, but he particularly based his identification upon the peculiar shape of one of the horns which was misshapen or "drooped." By other testimony it was shown that Gibson had purchased this cow from the defendant and that the animal had shortly thereafter been mysteriously shot, from the effects of which it died within a few days. It appeared that the defendant had from time to time, for a number of years, been in the employ of Mrs. Elliott and that he was in her employ at the time when the two cows were missed from the herd. Lammers testified that all of the cows which he leased to Mrs. Elliott but one were without horns, and that he had agreed with Mrs. Elliott that she might dehorn that animal and that he would allow her one dollar therefor, which he afterwards paid. Mrs. Elliott testified that the animal was dehorned by the defendant at her order and that she saw the "bloody horns" after the operation had been performed and also milked the cow after her horns had been removed. The father of the defendant testified to having sold to defendant a cow answering the description of the one which defendant sold to Gibson. This statement does not include all of the evidence, but sufficient is shown to make it appear that there was a decided conflict in the testimony as to whether the cow which defendant had sold to Gibson was the cow of Lammers. If the testimony as to the dehorning of the animal was true, then of course the head and horns inspected by Lammers could not have been those of either of the animals which had been separated from the lot of eleven cows leased to Mrs. Elliott. Under this state of conflict of evidence we think the court committed prejudicial error in allowing certain testimony to be admitted over the objection of the appellant. It appeared

that defendant had several brothers. While a witness named Dunegan was on the stand the district attorney asked the following question: "Q. Did you obtain from the Cuin boys a light-colered Jersey cow?" This question was objected to and the court inquired as to whether this related to any of the stock that had been referred to, and the district attorney replied: "Yes, sir, this is in regard to that light-colored Jersey cow which Mr. Lammers said disappeared at the same time this cow that Mr. Gibson got." The court thereupon overruled the objection and the witness answered the question: "A. Yes, sir." When asked what became of that cow he answered that she had been removed from his pasture and taken about a mile away and shot and killed. The prosecution had not in any way connected the appellant with the theft of the second cow, and the effect of this testimony was to intimate to the jury that some of the Cuin brothers had stolen that cow. The fact that she had also been shot in a mysterious way, as intimated by the witness, would have a tendency to cause the jury to assume that the defendant was in some way connected with the theft of the other cow when he was not charged with having stolen it. The same witness testified that he had sworn to a complaint charging another one of the Cuin boys with having stolen this second cow. It is altogether probable that the jury took into consideration this testimony as indicating the guilt of defendant, because it appeared that some other members of his family had had a part in disposing of the second cow belonging to Lammers.

Objection was made at the trial, and it is renewed here as illustrating error, that the district attorney was guilty of misconduct in his examination of certain witnesses. It does appear that improper questions were asked of Mrs. Elliott tending to impute to her illicit relations with the defendant, which method of impeaching the credibility of a witness is not permissible. However, as to all of the matters wherein misconduct of the district attorney is charged, it does not appear that at the trial appellant specifically assigned misconduct as the basis for his objections. These errors, therefore, are not reviewable. (*People* v. *MacDonald,* 167 Cal. 545, [140 Pac. 256], and cases therein cited.)

It was within the discretion of the court to allow a witness to be called in rebuttal and to give testimony which more properly should have been introduced on the main case for the

prosecution, where the defendant was allowed an opportunity to rebut such testimony if he desired. It does not appear that he was denied that right. We do not think that the failure of the court to give an instruction specifically defining reasonable doubt, in the absence of a request therefor, was error. Among the instructions given are two which are justly subject to the criticism which appellant makes of them: One was to the effect that if the jury believed from the evidence that the defendant was found "with the stolen property in his possession," etc. This instruction improperly assumed that the cow had been shown to have been stolen, when the fact was one directly in issue and, under the testimony, a debatable question. Another instruction given was as follows: "The jury is instructed that to constitute larceny there must be a felonious and fraudulent taking of the property with the intent to deprive the owner of its use. The taking must be accompanied by the removal, but such removal is sufficient." This instruction is ambiguous and may have been misleading to the jury. In a clear case it should not perhaps be said that these errors in the instructions were sufficient to warrant a reversal, but taking the matter of the improper introduction of the testimony mentioned, together with the other errors noted, we think it is evident from the entire record that there has been in this case a miscarriage of justice.

The judgment and order are reversed.

Conrey, P. J., and Shaw, J., concurred.